## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-24054-CIV-LENARD/GOODMAN

**SANTOS MANUEL PANCHAME**
**MARTINEZ,**

       Plaintiff,

**v.**

**EDDY COTO PRODUCE, INC.,**
**and EDUARDO COTO,**

       Defendants.

_____/

## <u>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>
## <u>(D.E. 40)</u>

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment, ("Motion," D.E. 40), filed October 23, 2015.  Plaintiff filed a Response on October 30, 2015, ("Response," D.E. 42), to which Defendants filed a Reply on November 3, 2015, ("Reply," D.E. 44).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

Defendant Eduardo Coto ("Coto") owned and operated Defendant Eddy Coto Produce, Inc. ("ECPI" and collectively "Defendants"), which is a wholesale produce distributor located in Miami, Florida.  (Def.'s Facts ¶ 1.)  Coto and his wife moved to the

---

[1]    The following facts are gleaned from Defendants' Concise Statement of Material Undisputed Facts, ("Def.'s Facts," D.E. 41), and Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, ("Pla.'s Facts," D.E. 43).  All facts are undisputed unless otherwise noted.

United States from Cuba in 1999; neither spoke English.  (Id. ¶ 15.)  After their arrival, Coto and his wife visited a large outdoor market called the Opa-Locka Flea Market.  (Id. ¶ 16.)  After asking a vendor about his produce business, Coto and his wife rented a booth at the flea market and began selling produce.  (Id. ¶¶ 16-18.)  They did this seven days a week for the next five years.  (Id. ¶ 18.)

In 2006, Coto asked wholesale business owners in Miami's Produce District how they ran their businesses.  (Id. ¶ 19.)  Among other things, he learned that the wholesalers paid their employees a weekly salary and their employees earned additional compensation through tips from customers.  (Id. ¶ 20.)  Based upon what he learned, Coto determined to open his own wholesale produce business in Miami's Produce District.  (Id. ¶ 21.)  In 2007, he formed ECPI.  (Id.)

When Coto hired employees at ECPI, he told them that they would earn a weekly salary and that part of their compensation would come from tips they received from customers.  (Id. ¶ 23.)  Coto states that he paid his employees about $50.00 more per week than any of the other wholesalers paid their employees.[2]  (Id. ¶ 23.)

Plaintiff Santos Manuel Panchame Martinez ("Panchame") came to ECPI seeking work and Coto offered him a job assisting customers in loading produce into their vehicles.  (Id. ¶¶ 2-3.)  Panchame initially earned a weekly salary of $400.00.  (Id. ¶ 4.)

---

[2]     Although Panchame does not state that he disputes the allegation that Coto paid his employees more than other wholesalers, in his Affidavit submitted in support of his Response brief, he states that he currently works for another produce business that pays him $10 per hour and overtime wages.  (Pla.'s Facts ¶ 23 (citing Aff. of Santos Manuel Panchame Martinez, D.E. 50-1 ¶ 5).)

He also received tips from customers on a daily basis.  (Id.)  He estimated that he waited on twenty-five customers per day who tipped him $5 or less.  (Id. ¶ 24.)

Panchame never kept track of his work hours.  (Id. ¶ 13.)  He estimated that he worked 59 hours each week, but stated that he did not have set hours.  (Id. ¶ 5.)  At his deposition, Panchame testified that he missed days of work when his children were sick, when his girlfriend was in the hospital giving birth, and when he was arrested in 2011.  (Id. ¶¶ 6-8.)  He also admitted that there were days he left early, but that he "almost" never arrived late.  (Id. ¶¶ 9-10; Pla.'s Facts ¶ 10.)  He conceded that business slowed in the summer months and that the ECPI sometimes closed early during those months.  (Defs.' Facts ¶ 11.)  Although he could not recall which weeks he worked at least 59 hours, Panchame believes that the weeks in which he worked more than 59 hours and the weeks he worked less than 59 hours "even out."  (Id. ¶ 12; Pla.'s Facts ¶ 12 (quoting Panchame Dep. at 95:11).)

Defendants state that because Coto never worked for anyone else or any other business, he "knew nothing about laws that governed how much a business owner had to pay an employee or how many hours employees could work."  (Defs.' Facts ¶ 25.)  "Occasionally COTO would hear someone mention something called 'overtime' in the course of casual conversation but he had no idea what that word meant because he did not read or speak English and never had held a job as an employee."[3]  (Id.)

---

[3]       Plaintiff does not appear to dispute these allegations, but notes that at his deposition, when asked whether Plaintiff was paid overtime when he worked more than 40 hours in one week, Coto responded "I don't know."  (Pla.'s Facts ¶ 25 (citing Coto Dep., D.E. 43-2 at 18:12-18).)

Defendants state that before Plaintiff sued them, Coto had never heard of the FLSA or any other law that regulated pay or hours. (Id. ¶ 26.) "He simply followed the pay practices of all other wholesalers in the Produce District." (Id.) He "believed it was legal to pay his employees a weekly salary and use tips to supplement their compensation." (Id.) He "had no idea there was any law that required employers to pay employees a minimum hourly wage or to pay time and a half an hourly rate for any hours over 40 in a work week. He never knew that employers were required to record an employee's work hours." (Id. ¶ 27.)

## II.     Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue

as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial

5

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

## III.    Discussion

Defendants argue that Plaintiff cannot satisfy his burden of showing by just and reasonable inference that he worked overtime hours for which he was not compensated. (Mot. at 5.)  Defendants further argue that Plaintiff cannot establish a willful violation of the FLSA that would extend the statute of limitations from two years to three years.  (Id. at 7.)  Plaintiff argues that whether he can support his overtime allegations by just and reasonable inference, and whether Defendants willfully violated the FLSA, should be determined by a jury.  (Resp. at 2-7.)

> ### a.    Plaintiff's burden of proving uncompensated overtime hours by just and reasonable inference

First, Defendant argues that Plaintiff cannot meet his burden of proving by a just and reasonable inference that he worked overtime hours for which he was not compensated.  (Mot. at 5.)  Plaintiff argues that the jury should decide whether he has met his burden.

The Eleventh Circuit has explained that to prevail on an FLSA claim, a plaintiff "must prove that they were suffered or permitted to work without compensation."  Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007).  "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work."  Id. at 1314-15 (citing Reich v. Dep't of Conservation and Nat. Res.,

28 F.3d 1076, 1082 (11th Cir. 1994)).  "Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'"  Id. at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).  "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment."  Id. (citing Anderson, 328 U.S. at 687).

The Supreme Court in Anderson stated that if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes,

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

328 U.S. at 687, superseded by statute on other grounds as stated in Sandifer v. U.S. Steel Corp., __ U.S. __, 134 S. Ct. 870, 875-76 (2014).  Instead, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.

> The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. at 687-88.

7

Here, Defendants concede that they did not keep track of Plaintiff's work hours. (Mot. at 5.)  Thus, Plaintiff must prove that he has in fact performed work for which he was improperly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  Id. at 687.

In his answers to interrogatories, Plaintiff estimated that he worked 59 hours each week.  (See D.E. 40-4 at 3.)  He stated:

> I worked for Defendants from on or about April 25, 2010 through on or about October 28, 2014.  I worked for Defendants Monday through Friday from approximately 3:00 a.m. through to approximately 1:00 p.m.  I also worked for Defendants on Saturday from approximately 3:00 a.m. through to approximately 12:00 p.m.  I had approximately 10-15 minutes break daily.  Thus, I worked for Defendants approximately 59 hours . . . .

(Id.)  The only other evidence Plaintiff identified regarding the amount of hours he worked is the following exchange at his deposition:

> Q.     So there were some weeks where you didn't work 59 hours a week, right?
>
> A.     Yes, but there were weeks where I worked more than that.
>
> . . .
> A.     There were weeks that I worked more than 59 hours.  I imagine the weeks that I did not work 59 hours should even out for all the weeks that I did work the 59 plus hours.

(Panchame Dep. (D.E. 40-3) at 94:24 – 95:12.)  Plaintiff went on to note that "[t]his is all an approximation because I didn't have a set hour."  (Id. at 95:25 – 96:1.)  Plaintiff's evidence is unsubstantiated through others' testimony or documentary evidence.

"As tempting as it may be to grant summary judgment on this basis," Diaz v. Jaguar Rest. Grp., LLC, 649 F. Supp. 2d 1343, 1363 (S.D. Fla. 2009), Plaintiff has

satisfied his burden at this stage.   See id.; see also Santelices v. Cable Wiring, 147 F.

Supp. 2d 1313, 1328-29 (S.D. Fla. 2001).   Plaintiff's evidence here provides similar

information to the evidence presented in Santelices:

> Santelices testified that he worked 'on an average basis, it was more than
> forty [hours].'   He was required to and did arrive at work by 6:30 a.m.   He
> took about fifteen (15) minutes for lunch.   He would drive home, spend 20
> minutes or so changing and then watched Jeopardy.   Jeopardy began at 7:30
> p.m.   '[E]very day I was getting home after five.'   He worked six (6) days a
> week.

147 F. Supp. 2d at 1329 (internal citations omitted).   Based on this testimony, Santelices

argued that he had presented sufficient evidence to demonstrate that he worked ten or

more hours per day, six days per week.   Id.   Judge Jordan agreed, concluding that, when

drawing reasonable inferences in Santelices favor, "[a] reasonable jury hearing this

testimony could conclude that Mr. Santelices worked overtime hours for which he was

not compensated."   Id.

Similarly, in Diaz, the plaintiff's complaint alleged that she worked 60 hours per

week but did not receive an overtime rate for any hours worked in excess of 40 hours per

week.   649 F. Supp. 2d at 1362.   The only evidence supporting the amount of overtime

compensation she alleged she was due was "the 'game' referred to in her deposition in

which her daughter would, twice a year, inform her of the number of hours she was away

from home."   Id.   Judge Torres opined:

> This seems to be precisely the "mere scintilla" type of evidence that will
> not suffice to survive summary judgment.   The records of this game, if any,
> are not on the record, despite having been requested by Defendant.   There
> has been no showing as to how the estimate of 60 hours per week was
> derived from this purported game.   Absent recorded evidence of this game,

the Plaintiff's reference to it serves merely as an "unsupported, self-serving statement [that is] insufficient to avoid summary judgment."

Id. (internal citation omitted) (quoting Perlman v. United States, No. 00–3703–CIV–GOLD, 2002 WL 575788, at *6 (S.D. Fla. Mar. 5, 2002)).  Nevertheless, the court found that the plaintiff's uncorroborated deposition testimony of her usual schedule was sufficient to meet her burden at the summary judgment stage.  Id. at 1363 (citing Santelices, 147 F. Supp. 2d at 1329).  However, the court noted that "on Rule 50 review, the development of the record at trial will not allow the Court to let the issue go to the jury." Id.

The Court finds that the record evidence supporting Plaintiff's overtime wage claim is analogous to the evidence presented in Santelices and Diaz.  Consistent with those cases, the Court finds that Plaintiff has satisfied his burden of proving that he has performed work for which he was not properly compensated, and producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  Anderson, 328 U.S. at 687; Allen, 495 F.3d at 1315.

Although Defendants cite excerpts from Plaintiff's deposition testimony in an attempt to negate the reasonableness of the inference to be drawn from Plaintiff's evidence, "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.  "Therefore, a material issue of fact exists as to whether [Plaintiff] has proven that

10

he worked overtime hours for which he was not compensated." <u>Santelices</u>, 147 F. Supp. 2d at 1329; <u>see also</u> <u>Diaz</u>, 649 F. Supp. 2d at 1363.

**b.    Willfulness**

Second, Defendants argue that Plaintiff cannot establish that Coto willfully violated the FLSA so as to extend the statute of limitations from two years to three years. (Mot. at 7.)   Plaintiff argues that willfulness under the FLSA is a jury question not appropriate for summary disposition.   (Resp. at 5 (citing <u>Morrison v. Quality Transps.</u> <u>Servs., Inc.</u>, 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007)).

"The statute of limitations for a claim seeking unpaid overtime wages under the FLSA is generally two years." <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1280 (11th Cir. 2008) (citing 29 U.S.C. § 255(a)).   "But if the claim is one 'arising out of a willful violation,' the statute of limitations is extended to three years." <u>Id.</u> (citing 29 U.S.C. § 255(a)).   "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." <u>Alvarez Perez v. Sanford-Orlando</u> <u>Kennel Club, Inc.</u>, 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing <u>McLaughlin v.</u> <u>Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)).   "An employer acts with reckless disregard for the Act if the employer's conduct is more than 'merely negligent,' <u>McLaughlin</u>, 486 U.S. at 133, and is blameworthy 'if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry[.]'" <u>Davila v. Menendez</u>, 717 F.3d 1179, 1185 (11th Cir. 2013)

(citing 29 C.F.R. § 578.3(c)(3); 5 C.F.R. § 551.104).  "The determination of willfulness is 'a mixed question of law and fact.'"  Allen, 495 F.3d at 1324 (quoting Alvarez v. IBP, Inc., 339 F.3d 894, 908-09 (9th Cir. 2003)).  Where a reasonable jury could find a willful violation by the employer, summary judgment should be denied.  See Davila, 717 F.3d 1179, 1185 (11th Cir. 2013)

Here, the only evidence Plaintiff cites with regard to the issue of willfulness is Coto's deposition testimony.  (See Resp. at 6 (citing Coto Dep. (D.E. 43-2) at 16:3-7).) The relevant portion of the deposition transcript is reproduced below, with the excerpt on which Plaintiff relies in bold:

> Q.   Do you know – do you, yourself, know what time and a half, overtime pay is?
>
> A.   Now, I do, but I didn't before.
>
> Q.   When did you find out – have you known about what overtime, time and a half pay is over the last five years?
>
> A.   Now I know it, before I didn't.
>
> Q.   When did you learn about time and a half overtime pay is?
>
> A.   Right after this problem.
>
> Q.   You learned about what time and a half, overtime pay is only from this lawsuit?
>
> A.   Yes.
>
> **Q.   Prior to the lawsuit, did you ever hear anything to the effect that some workers when they work more than 40 hours a week get paid extra, did you hear about that?**
>
> **A.   Yes.**

(Coto Dep. at 15:15 – 16:7.)  Defendants argue that this last response was a result of a misunderstanding of what he was being asked, as demonstrated later in his deposition testimony:

> Q.    Did you know there was anything that said that if you worked a certain number of hours that you then had to pay them more?
>
> MR. KELLY:  Object to the form.
>
> THE WITNESS:  I did not know.
>
> BY MS. LANGBEIN:
>
> Q.    Okay. So you were asked a question before about, did you know that if a worker worked more than 40 hours a week they're supposed to get extra and you answered yes.  What did you mean by that?
>
> MR. KELLY:  Object to the form.
>
> THE WITNESS: I got confused.
>
> BY MS. LANGBEIN:
>
> Q.    Okay. So had you had any clue, at all, that there was a law called the Fair Labor Standards Act that required workers to be paid more once they've worked more than 40 hours a week?
>
> A.    I did not know.
>
> Q.    Did any of your workers ever come to you and say hey, you owe me money because I worked over 40 hours a week?
>
> A.    Never.

(Id. at 36:3-25.)

The Court finds that a genuine issue of material fact exists as to whether Defendants recklessly disregarded their obligations under the FLSA.  The undisputed evidence shows that before Plaintiff initiated this lawsuit, Coto had never heard of the

Fair Labor Standards Act or any other law regulating employee pay and work hours. (Coto Decl. (D.E. 40-2) ¶¶ 9, 11.)  From 2007, when Coto started ECPI, to the institution of this lawsuit, no employee had ever complained about their work hours or salary to Coto.  (Id. ¶ 10.)  Moreover, to Coto's knowledge, none of the neighboring businesses had ever been sued for minimum wage or overtime violations.  (Id.)  Although Coto had overheard people speaking about "overtime" in informal conversation, he had no idea what the word meant because he does not read or speak English, and he had never worked as an employee for another business.  (Id. ¶ 8.)  The disputed evidence involves whether Coto had heard something "to the effect that some workers when they work more than 40 hours a week get paid extra."  (Coto Dep. at 16:3-7.)

The Eleventh Circuit has warned that judgment as a matter of law "can be [entered] only when the evidence favoring the [movant] is so one-sided as to be of overwhelming effect."  Davila, 717 F.3d at 1184 (quoting EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1250 (11th Cir. 1997)).  Here, the Court cannot say that the evidence is so overwhelming as to require the entry of judgment in Defendants' favor.  Based on the record evidence, a reasonable jury could find that Defendants "'should have inquired further into whether [their] conduct was in compliance with the Act, and failed to make adequate further inquiry[.]'"  Id. (quoting 29 C.F.R. § 578.3(c)(3)).  Therefore, a genuine issue of material fact exists as to whether Defendants willfully violated the FLSA.  See id.

**IV.     Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for

Summary Judgment is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of

January, 2016.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**